UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUAN MANUEL GARCIA-BARAJAS,

                    Plaintiff,

        v.

NESTLE PURINA PETCARE CO. and
Does 1 Through 50, Inclusive,

              Defendants.

1:09-CV-00025  OWW DLB

MEMORANDUM DECISION AND ORDER
GRANTING DEFENDANT'S MOTION TO
STRIKE AND DENYING IN PART AND
GRANTING IN PART DEFENDANT'S
MOTION TO DISMISS (DOC. 18)

I. <u>INTRODUCTION</u>

Juan Manuel Garcia-Barajas ("Plaintiff") filed a complaint against his former employer, Nestle Purina Petcare Co. ("Defendant") and Does 1-50 in Kern County Superior Court on November 10, 2008.  Doc. 2.  Defendant removed to federal court on January 6, 2009, pursuant to 28 U.S.C. § 1441(a), based on diversity of citizenship.  *Id.*  On April 10, 2009 Plaintiff filed a First Amended Complaint ("FAC").  Doc. 17.  Before the court for decision is Defendant's motion to dismiss certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike certain damages prayers pursuant to Federal Rule of Civil Procedure 12(f).  Doc. 18.  Specifically, Defendant argues: 1) Plaintiff is not entitled to "emotional distress" and punitive

1

damages in connection with his claims under California Labor Code ("CLC") §§ 200, 226.7, and 512; 2) Plaintiff has failed to allege sufficiently outrageous conduct to support a claim for intentional infliction of emotional distress ("IIED"), or, in the alternative, Plaintiff's IIED claim is barred by California workers' compensation law; and 3) Plaintiff has failed to state a claim for negligent infliction of emotional distress ("NIED"), or, in the alternative, Plaintiff's NIED claim is barred by the workers' compensation system.  *Id.*  Plaintiff opposes the motion to dismiss and/or strike.  Doc. 22.  Defendant filed a reply on July 6, 2009.  Doc. 26.

## II. BACKGROUND

Plaintiff was employed at Defendant's Maricopa, California cat litter manufacturing facility from May 1989 to March 2007. FAC at ¶¶ 7, 9.  During his eighteen years of employment, Plaintiff received a series of recommendations, certificates, and promotions.  *Id.* at ¶¶ 7-8.  In 1998, Plaintiff was promoted from Large Pack Line Person to Production Line Technician.  *Id.* at ¶ 8.  In 2002, he was promoted to Senior Line Technician and, in 2005, he was promoted to Processing Operator, a title he held until the termination of his employment.  *Id.*  Plaintiff's duties as Processing Operator included driving and operating a loader, "a large, heavy, wheeled piece of machinery used to load sand and dirt," and submitting daily reports.  *Id.* at ¶¶ 10, 14D.

2

Plaintiff alleges that Defendant engaged in unreasonably dangerous work practices and failed to address the Maricopa facility's unsafe working conditions, which jeopardized Plaintiff's health and safety. *Id.* at ¶ 16. Plaintiff contends that he was required to operate a loader under extreme heat conditions without a working air conditioner and with weak breaks and worn-out tires. *Id.* at ¶ 10. Moreover, on two occasions, under threats of written warnings, Plaintiff was ordered to unclog a facility silo[1] without proper training or safety gear. *Id.* at ¶ 14A-B. One occasion resulted in Plaintiff becoming stuck and, after being pulled out by a co-worker, Plaintiff emerged unable to breathe properly and dizzy because of exposure to fine dust particles. *Id.* at ¶ 14B.

Plaintiff also contends that Defendant did not give him meal and rest breaks and that Defendant failed to adequately compensate him for overtime as well as vacation time. *Id.* at ¶¶ 12, 14C. Plaintiff further alleges that Defendant required him to work unreasonably long hours, such as assigning him to work alone on a two-man job six to seven days a week on twelve hour shifts. *Id.* at ¶ 14A. Plaintiff asserts that he was accused of insubordination and refusing to follow a direct order in response to informing the Supervisor and Plant Manager of his concerns. *Id.* at ¶ 14E-F.

---

[1]    A tower-like vessel that stored fine dust used to manufacture cat litter.  FAC ¶ 13A n.1.

3

Plaintiff was placed on disciplinary suspension from March 2, 2007 to March 5, 2007, and, on March 9, 2007, Defendant terminated Plaintiff's employment.  *Id.* at ¶¶ 14E-F, 15.

### III. STANDARD OF REVIEW

A.   Motion to Strike.

Federal Rule of Civil Procedure 12(f) provides that "redundant, immaterial, impertinent, or scandalous matters" may be "stricken from any pleading."  Fed. R. Civ. P. 12(f).  The disposition of a motion to strike lies within the discretion of the district court; such motions are disfavored and infrequently granted.  *Legal Aid Serv. of Or. v. Legal Serv. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008).  Nevertheless, a motion to strike may serve as an appropriate vehicle for striking improper prayers for damages.  *See In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 346 (N.D. Ill. 2002).

B.   Motion to Dismiss for Failure to State a Claim.

Federal Rule of Civil Procedure 12(b)(6) provides that a motion to dismiss may be made if the plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding whether to grant a motion to dismiss, the court accepts all factual allegations of the complaint as true and draws all reasonable inferences in the light most favorable to the nonmoving party.  *See Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).  "To avoid a Rule(b)(6) dismissal, a

4

complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Weber v. Dept. of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 561-63 (2007)) (rejecting interpretation of Rule 8 that permits dismissal only when plaintiff can prove "no set of facts" in support of his claim). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV. <u>ANALYSIS</u>

A.   <u>Motion to Strike Request for Emotional Distress and Punitive Damages In Connection with Claims Brought Under California Labor Code Sections 200, 226.7, and 512.</u>

Defendant moves to strike the tort damages allegations in Plaintiff's Fourth, Fifth, and Sixth Causes of Action.[2]  In the Fourth Cause of Action for Failure to Pay Wages and Other

---

[2]   Plaintiff argues that Defendant misapplied the Federal Rule of Civil Procedure 12(f) standard, stating that such a motion can only be used when the pleading is "redundant, immaterial, impertinent, or scandalous." Doc. 22 at 13 (quoting Fed. R. Civ. P. 12(f)). Plaintiff further argues that 12(f) motions are "rarely granted ... when the moving party can show no prejudice" as a result. *Id.* at 14. Plaintiff's focus on "prejudice" is misplaced. "Although [a motion to strike] is not normally granted unless prejudice would result to the movant from the denial of the motion," it is appropriately granted where a prayer or defense is "clearly legally insufficient..." *United States, v. 729.773 Acres of Land*, 531 F.Supp. 967, 971 (D.C. Haw. 1982) (citations omitted). Defendant need not prove prejudice in connection with its motion to strike an unlawful form of damages.

5

Benefits in Violation of Cal. Lab. Code § 200, *et. seq*, Plaintiff alleges that he was entitled to certain unpaid wages immediately upon termination.  FAC at ¶ 41.  These unpaid wages included earned wages, a quarterly bonus, vacation and holiday pay, and overtime.  Despite his demands, Plaintiff alleges that Defendant has not paid these additional compensations.  *Id.* at ¶¶ 41-42. Plaintiff alleges that he should be awarded punitive and exemplary damages to compensate him for "suffer[ing] severe emotional and mental distress" as a result of Defendant's "malicious" and "intentional" acts.  *Id.* at ¶¶ 47-48.

Plaintiff's Fifth Cause of Action is based on Cal. Lab. Code § 226.7, which affords Plaintiff meal or rest periods and provides that if Defendant fails to provide such periods, Plaintiff is entitled to one additional hour of pay at his regular rate of compensation.  Plaintiff alleges that he was forced to work during his meal and rest periods and was not compensated in accordance with law.  FAC at ¶¶ 51-52, 54. Plaintiff seeks punitive damages to compensate him for "suffer[ing] severe emotional and mental distress" as a result of Defendant's "malicious" and "intentional" acts.  *Id.* at ¶¶ 56-57.

In the Sixth Cause of Action for Violation of Cal. Lab. Code § 500, *et. seq*, Plaintiff alleges that Cal. Lab. Code § 512 afforded him a meal period of at least thirty minutes when his work day was over five hours.  Plaintiff maintains that he was

6

regularly denied and forced to work through his meal periods even though his workdays were longer than five hours.  FAC at ¶¶ 60-61.  Plaintiff alleges that he should be awarded punitive damages to compensate him for "suffer[ing] severe emotional and mental distress" as a result of Defendant's "malicious" and "intentional" acts.  *Id.* at ¶¶ 63-64.

Defendant asserts that tort damages, including punitive damages and damages for severe emotional and mental distress, are not available under any of these claims.  In support of this proposition, Defendant cites *Brewer v. Premier Golf Properties*, 168 Cal. App. 4th 1243, 1246-47 (2008), which concerned an employee's California Labor Code claims for minimum wage, meal and rest breaks, and pay stub violations.  *Brewer* applied the so-called "new right-exclusive remedy" doctrine, which provides that "where a statute creates new rights and obligations not previously existing in the common law, the express statutory remedy is deemed to be the exclusive remedy available for statutory violations, unless it is inadequate."  *Id.* at 1252 (citing *De Anza Santa Cruz Mobile Estates Homeowners Ass'n. v. De Anza Santa Cruz Mobile Estates*, 94 Cal. App. 4th 890, 912 (2001)).  *Brewer* held that the provisions of the Labor Code invoked in that case, namely those regulating pay stubs (§ 226), minimum wages (§ 1197.1), meal breaks (§ 512), and rest breaks (8 Cal. Code Regs. § 11090, subd. 12(A)), created "new rights and

7

obligations not previously existing in the common law, and the statutory scheme provided "a comprehensive and detailed remedial scheme for [their] enforcement."  *Brewer*, 168 Cal. App. 4th at 1253-54 (citing *Rojo v. Kliger*, 52 Cal. 3d 65, 79 (1990)). Accordingly, punitive damages were not available.

Plaintiff argues that *Brewer* was wrongly decided, relying on several federal and state cases addressing claims for wrongful discharge in violation of public policy and/or claims brought under California's Fair Employment and Housing Act ("FEHA").  For example, in *Commodore Home Systems Inc. v. Superior Court*, 32 Cal. 3d 211, 213-14 (1982), the California Supreme Court considered whether an employee who brought a FEHA claim alleging that he was discharged because of his race, could recover punitive damages even though such damages are not specifically identified under FEHA.  *Commodore* found punitive damages recoverable because the common law recognized a tort cause of action for wrongful discharge in violation of public policy.  *Id*. at 219-21.

The Supreme Court reiterated this holding in *Rojo*, emphasizing that "FEHA was meant to supplement, not supplant or be supplanted by, existing antidiscrimination remedies, in order to give employees the maximum opportunity to vindicate their civil rights against discrimination..." *Rojo*, 52 Cal. 3d at 74-75.  "By expressly disclaiming a purpose to repeal other

8

applicable laws..., we believe the Legislature has manifested an intent to amplify, not abrogate, an employee's common law remedies for injuries relating to employment discrimination." *Id*. at 75.

These FEHA cases are not direct authority for Plaintiff's position that punitive damages should be made available under the wage, hour, and break provisions he invokes, as they address common law claims for which punitive damages were an available remedy.  Several federal district courts considering claims brought under the CLC have rejected Plaintiff's argument, following *Brewer*.  *Czechowski v. Tandy Corp.,* 731 F. Supp. 406, 410 (N.D. Cal. 1990), held that plaintiff's claims for lost vacation benefits under the Labor Code did not support a punitive damages award because § 203 provided for the award of statutory penalties when an employer "willfully fails to pay" wages due upon termination, finding that "[t]he Legislature's provision of such statutory penalties precludes an award of punitive damages." *Accord In re Wal-Mart Stores Inc. Wage and Hour Litig.,* 505 F. Supp. 2d 609, 620-21 (N.D. Cal. 2007).

Plaintiff also relies on *Freund v. Nycomed Amersham*, 347 F.3d 752, 756, 757 n.5 (9th Cir. 2003), concerning a claim for wrongful discharge in violation of public policy, a California tort, based on Cal. Lab. Code § 6310, which prohibits discharging an employee for making "any oral or written complaint...with

9

reference to employee safety or health...”  The Ninth Circuit first held that an alleged violation of § 6310 may support a tort claim for wrongful discharge in violation of public policy. *Freund*, 347 F.3d at 758-59.  The Ninth Circuit cited *Rojo* and another California case, *Hentzel v. Singer Co.,* 138 Cal. App. 3d 290, 301-02, 305 (1982), which held that wrongful termination actions brought directly under § 6310 were not limited to the statutorily-identified remedies.  *Hentzel* found that punitive damages were available for a claim of wrongful discharge in violation of public policy premised on a CLC § 6310 violation. *Id.*

   *Hentzel* applied the “new right-exclusive remedy” doctrine to § 6310, articulating the doctrine as follows:

> Where a new right,-one not existing at common law, is created by statute and a statutory remedy for the infringement thereof is provided, such remedy is exclusive of all others.  But, if a right was established at common law or by statute before the new statutory remedy was created, the statutory remedy is usually regarded as merely cumulative, and the older remedy may be pursued at the plaintiff's election.

*Id.* at 301.  *Hentzel* concluded that at the time of the adoption of § 6310, “at least a portion of the rights” protected by that section “-the right to testify without retaliation-had been judicially recognized.”  *Id*.  In this light, “[t]hat the state Legislature intended, by adopting [§ 6310], to limit state causes of action or remedies seems highly unlikely.”  *Id*.  Plaintiff has not identified, nor has the court located, any prior non-

10

statutory judicially-recognized rights that existed at common law
of the type now embodied in the CLC provisions invoked in the
Fourth, Fifth, and Sixth Causes of Action.  The § 6310 cases, as
those based upon FEHA, are inapposite.

Plaintiff also relies upon the unpublished Ninth Circuit
decision in *Bender v. Darden Restaurants, Inc.,* 26 Fed. Appx.
726, 2002 WL 74441 (9th Cir. Jan. 18, 2002).  *Bender* reinstated,
without any relevant reasoning, a jury award of punitive damages
in a missed meal and rest breaks case, invoking the CLC.  *Id.* at
729, 2002 WL 74441, at *2.  *Bender* assumed, without discussion or
analysis and without presentation of the issue on appeal, that
punitive damages were available under Cal. Lab. Code § 226.7(b),
which concerns meal and rest periods.  *Bender*, 729, 2002 WL
74441, at *2.  Bender is of no precedential value.

Finally, Plaintiff asserts that *Brewer* incorrectly applied
the new right-exclusive remedy doctrine to the wage and hour
claims in that case because "there is [a] common-law right to the
wages earned by [an employee] under his contract of employment,"
citing *Klaffki v. Kauffman*, 52 Cal. App. 48, 52-53 (1921).  But,
to the extent that *Klaffki* recognizes such a common law right, it
was premised on contract.  Under California law, as *Brewer*
correctly observes: "punitive damages are constrained generally
by the restriction that they are ordinarily recoverable only in
'an action for the breach of an obligation <u>not</u> arising from

11

contract...[Cal.] Civ. Code § 3294)." *Brewer*, 168 Cal. App. 4th at 1251.  Similarly, other forms of tort damages, including those for "mental suffering and emotional distress," are generally not compensable in contract actions.  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 516 (1994).  Accordingly, even if Plaintiff is entitled to bring a cause of action under the common law, it would be premised on a contract right, for which tort remedies are unavailable.[3]

    *Brewer*, which is consistent with two federal cases, *Czechowski* and *In re Wal-Mart Stores*, correctly determined that punitive damages are not available for the wage and hour violations asserted in Plaintiff's Fourth, Fifth, and Sixth Causes of Action.  Plaintiff's allegations for these types of damages are stricken from the Fourth, Fifth, and Sixth Causes of Action.

---

[3]    *Brewer* takes this argument one step further, finding that claims brought under the Labor Code itself for unpaid wages and unprovided meal/rest breaks "arise from rights based on [an] employment contract," citing a single California Court of Appeals case, *Kwan v. Mercedes-Benz of North America, Inc.,* 23 Cal. App. 4th 174, 187-92 (1994), which held that the breach of consumer warranty law obligations constituted a breach of contract claim that did not support tort damages for emotional distress.  *Brewer*, 168 Cal. App. 4th at 1255.  Plaintiff correctly rejoins that the CLC represents the State's imposition of duties (e.g., the duty to pay overtime) upon employers; these are "not [] matter[s] left to the private discretion of the employer."  *Early v. Superior Court*, 79 Cal. App. 4th 1420, 1430 (2000).  It is therefore not fair to characterize the CLC itself as being limited to rights based on contract.  However, Plaintiff identifies no authority suggesting that this fact, on its own, warrants the application of punitive and emotional distress remedies to the CLC allegations in this case.  The non-contractual rights afforded employees through the CLC are new ones, subject to the new right-exclusive remedy doctrine.

**B.    Motion to Dismiss Eighth Cause of Action for IIED.**

Defendant moves to dismiss Plaintiff's Eighth Cause of Action for IIED on the grounds that: (1) Plaintiff fails to allege any sufficiently outrageous conduct; and (2) the claim is barred by California's workers' compensation system.

**1.    Is the Alleged Conduct Outrageous?**

Under California law, outrageous conduct is that which "exceed[s] all bounds of that usually tolerated in a civilized community." *KOVR-TV, Inc. v. Superior Court*, 31 Cal. App. 4th 1023, 1028 (1995). Such conduct is "of a nature which is especially calculated to cause, and does cause, mental distress," *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 155 n.7 (1987), and is regarded as "atrocious, and utterly intolerable" by reasonable persons, *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 499 (1970). It is generally recognized that conduct falls along a spectrum ranging from inherently outrageous conduct to "mere insults, indignities, threats, annoyances, [or] petty oppressions," which are not actionable. *Cole*, 43 Cal. 3d at 155 n.7. However, when someone abuses a position of authority to the detriment of another, the latter becomes actionable. *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1128 (1989).

"The requirements of the rule are rigorous, and difficult to satisfy." *Id.* at 1129. There is no "bright line," and a case-by-case analysis is required. *KOVR-TV*, 31 Cal. App. 4th at 1028.

13

Initially, "[i]t is for the court to determine...whether the defendant's conduct may reasonably be regarded as [] extreme and outrageous [so] as to permit recovery." *Fuentes v. Perez*, 66 Cal. App. 3d 163, 172 (1977).  However, where reasonable persons could differ, the question is one for the jury.  *Id.*

In the employment context, courts have determined that an employer's routine acts of personnel management, such firing an employee, do not rise to the level of outrageous conduct.  *Buscemi v. McDonald Douglas Corp.*, 736 F.2d 1358, 1352 (9th Cir. 1984).  In *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 79-80 (1996), relied upon by Defendant, plaintiffs alleged that supervisors, motivated by age discrimination, demoted and terminated employees, imposed salary caps, failed to promote employees, accused employees of not properly complying with their assigned duties, and failed to provide employees with sufficient clerical support.  *Janken* held that the actions of the supervisors were personnel management decisions, "an inherent and unavoidable part of the supervisory function," which "is not outrageous conduct...but rather conduct essential to the welfare and prosperity of society."  *Id.* at 64, 80.  The court concluded that despite Janken's allegations of improper motives, "[his] simple pleading of personnel management activity [was] insufficient to support a claim of [IIED]."  *Id.* at 80.  *Janken* was careful to distinguish, however, between personnel management

14

activities, "actions of a type necessary to carry out the duties of business...," and "harassment," which the court defined as "actions outside the scope of job duties which are not of a type necessary to business and personnel management." *Id*. at 65.

*Shoemaker v. Myers*, 52 Cal. 3d 1, 7-8, 25 (1990), also relied upon by Defendant, concerned allegations that plaintiff's supervisors interfered with an investigation, interrogated and threatened plaintiff regarding work incidents, and ultimately terminated him for insubordination.  The intentional nature of the conduct was clearly established; one of plaintiff's supervisors commented that "[i]f it had been anybody else but plaintiff, we wouldn't be doing it," and that they "just wanted to cause plaintiff as much grief as possible." *Id.* at 25.  The California Supreme Court suggested that the kinds of conduct at issue, such as criticism, discipline, and termination, even if nonconsensual, were "a normal and inherent part of [the] employment" relationship and thus not outrageous conduct.  *Id.* at 18, 25.

It is nevertheless possible to engage in outrageous conduct in the workplace.  Generally, courts have found an employer's conduct to be outrageous when the employer "(1) abuses a relation or position which gives him power to damage the [employee's] interest; (2) knows the [employee] is susceptible to injuries through mental distress; or (3) acts intentionally or

15

unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Cole*, 43 Cal. 3d at 155 n.7. Specifically, the threshold for outrageousness has been met where supervisors harassed employees using graphic and clearly offensive language. *See Alcorn* 2 Cal. 3d 493, 496-99 (outrageousness sufficiently pled where supervisor allegedly made repeated, racially derogatory comments toward African American employee), *Kovatch v. Cal. Cas. Mgmt.*, 65 Cal. App. 4th 1256, 1263, 1278 (1992) (same in case of derogatory comments concerning sexual orientation), *overruled on other grounds*, *Aguilar v. ARCO*, 25 Cal. 4th 826 (1998).

Here, Plaintiff alleges that he was intentionally subject to unreasonably dangerous working conditions, such as being forced, under threat of written warning, to enter and unclog a silo without adequate training or any safety gear, which resulted in his becoming trapped. FAC at ¶ 14B. He asserts he was enveloped by dust in the silo and unable to breathe. *Id.* He also was required to operate a known broken loader machine under extremely dangerous conditions. *Id.* at ¶¶ 10, 13C. Assuming the truth of Plaintiff's allegations, these conditions suggest intentional exposure to workplace safety hazards.[4] If Plaintiff was intentionally targeted to be subjected to life-threatening job

---

[4]    The parties have not cited, nor has the court located, any cases applying the outrageousness standard to an allegation of egregiously unsafe working conditions.

16

performance risks, reasonable jurors could differ as to whether the conduct alleged was an "unavoidable part of the supervisory function" and/or "essential to the welfare and prosperity of society," or whether it was only designed to injure Plaintiff and therefore "extreme and outrageous."  It cannot be determined, as a matter of law on this motion to dismiss, that Plaintiff was not, under these allegations, subjected to extreme and outrageous conduct based on intentional workplace safety risk exposure.  Whether the claim is barred by the workers' compensation system is a separate inquiry.

    2.   <u>Is the IIED Claim Barred by Workers' Compensation?</u>

    Defendant moves to dismiss Plaintiff's IIED claim on the ground that it is barred by the exclusive remedy of the Workers' Compensation Act ("WCA").  As a general rule, any injury suffered by an employee in the workplace, emotional or otherwise, is subsumed under the exclusive remedy provisions of workers' compensation unless "the employer's conduct [] contravenes fundamental public policy, [] or exceeds the risks inherent in the employment relationship."  *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 754 (1992) (internal quotations and citations omitted).

    "The touchstone of the workers' compensation system is industrial injury which results in occupational disability or death."  *Id. at* 753.  For emotional injury to be compensable, the

17

injury must "result in an industrial disability compensable under" the WCA.   *Id.* (citing CLC § 3208.1) (emphasis in original).   "It is theoretically possible to incur a work-related injury that results in no compensable industrial disability."   *Id.* at 754.

> Where the employee suffers annoyance or upset on account of the employer's conduct but is not disabled, does not require medical care, and the employer's conduct neither contravenes fundamental public policy nor exceeds the inherent risks of the employment, the injury will simply not have resulted in any occupational impairment compensable under the workers' compensation law or remediable by way of a civil action. To be sure, the theoretical class of cases which fit these criteria, in which there will be no remedy, would appear to be rather limited. Nevertheless, the possibility of a lack of a remedy in a few cases does not abrogate workers' compensation exclusivity. Not every aggravation in normal employment life is compensable."

*Id.* at 755.

However, where "the employer's conduct exceeds the inherent risks of employment" the claim may fall outside the scope of workers' compensation.   *See id.; Shoemaker*, 52 Cal. 3d, at 7, 16 (noting exception to the exclusive remedy rule "where the employer...stepped out of [his] proper role[]").   Here, accepting all of the complaint's allegations in Plaintiff's favor, the alleged facts suggest that Plaintiff was subjected to risks that were beyond those "inherent" in the workplace because, even if hazardous loader work and silo cleaning are normal tasks, the added facts that high risk conditions existed in the assigned

performance of these duties may go beyond the inherent risks of Plaintiff's job.  That Plaintiff was terminated for complaining about those risks may be whistle blowing in violation of public policy.  Plaintiff's IIED claim is not barred by workers' compensation as a matter of law.  Disputed facts exist whether Plaintiff's intentional exposure to serious known hazards goes beyond risks inherent in the job.

Workers' compensation is not a bar where "the employer's conduct [] contravenes fundamental public policy." *Livitsanos*, 2 Cal. 4th at 815; *see also Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1100 (1992), *overruled on other grounds*, *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998) (where employer terminates employee in violation of important public policy prohibiting interference with an investigation into sexual harassment, employer's actions "cannot under any reasonable viewpoint be considered a normal part of the employment relationship").  *Gantt* concluded that because the duty to implement fundamental public policies was impliedly imposed by law on all employers, recovery for such a breach is not preempted by other remedies afforded by worker's compensation.  *Id.  Cabesuela v. Browning-Ferris Indus. Of Cal., Inc.*, 68 Cal. App. 4th 101, 112-13 (1998), applied this rule to an IIED claim premised on an employer's violation of the fundamental public policy of preventing termination for reporting safety violations.

19

Here, in addition to alleging that Defendant intentionally placed him in unreasonably dangerous working conditions, Plaintiff claims that his termination for complaining about safety violations was also "outrageous" as punishment for whistleblowing.  According to Freund, "[a]n employer who fires an employee in retaliation for protesting unsafe working conditions violates fundamental public policy."  Freund, 347 F.3d at 759.  Such a claim is not barred by workers' compensation as a matter of law.

Defendant's motion to dismiss Plaintiff's Eighth Cause of Action for IIED is DENIED WITHOUT PREJUDICE.

C.   <u>Motion to Dismiss Ninth Cause of Action for NIED.</u>

Defendant moves to dismiss Plaintiff's Ninth Cause of Action for NIED on the grounds: (1) the tort is no longer recognized under California law; and (2) the claim is barred by California's workers' compensation system.

1.   <u>NIED Claims May be Construed As Negligence Claims.</u>

Defendant argues that the tort of NIED is no longer recognized in California, citing *Potter v. Firestone Tires & Rubber Co.*, 6 Cal. 4th 965, 983 (1993); the California Supreme Court's decision that there is "no independent tort of negligent infliction of emotional distress."  However, *Potter* also concluded that a NIED claim may instead be construed as one for

20

negligence.  *Id.  Potter* was followed in *Haddox v. City of Fresno*, 2008 WL 53244, *12 (E.D. Cal. 2008), construing a NIED claim as one for negligence.

Alternatively, Defendant argues that even if the claim is construed as one for negligence, it must be dismissed because Plaintiff does not allege any physical injury.  *Potter* analyzes whether a defendant has an independent duty to protect the emotional condition of a plaintiff and holds that "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of the duty.  Even then, with rare exceptions, a breach of a duty must threaten physical injury..." *Potter*, 6 Cal. 4th at 985.[5]

Here, Plaintiff alleges that Defendant's conduct threatened and in fact did cause him physical injury.  Plaintiff's complaint discusses an incident where Plaintiff was intentionally sent into and became trapped in a silo, from which he "emerged feeling dizzy and was unable to breathe properly."  FAC at ¶ 13B.

_____

[5]   Defendant refers to other reasoning in *Potter* that concerns the unique circumstances presented by emotional distress resulting from the fear of cancer caused by exposure to carcinogens.  *Potter*'s fear of cancer analysis is not relevant here.  *Potter*'s key holding is that unless a defendant has assumed a special duty to plaintiff involving plaintiff's emotional condition, the conduct alleged to have been negligent must, at the very least, threaten physical injury.  *Potter*, 6 Cal. 4th at 985.

Plaintiff further alleges threats of physical injury, including the reasonable fear "that the [broken] loader would slide down a mountain slope into a steep ditch causing him and/or other employees to be badly injured or killed." *Id.* at ¶ 10.

Defendant has a duty of care under California law to avoid exposing its employees to unnecessary risks. *See* Cal. Lab. Code §§ 6310, 6400, 6402, 6404; *Bendix Forest Products Corp. v. Division of Occupational Saf. & Health*, 25 Cal. 3d. 465, 470-71 (1979). Whether any harm caused by a breach of such a duty is barred by the exclusive remedy of workers' compensation is a different question.

Defendant also takes issue with whether intentional acts can serve as the basis for a negligence claim, pointing out that "Plaintiff has only challenged things he affirmatively alleges w[]ere intentional acts." Doc. 18 at 9. In arguing that courts have dismissed negligence claims when the alleged conduct at issue is inherently intentional, Defendant cites *Semore v. Pool*, 217 Cal. App. 3d 1087, 1105 (1990), where the conduct alleged could not be negligence because all of the employer's actions were intentional, not negligent. *Semore* quotes *Cole*: "[a]n employer's supervisory conduct is inherently intentional." *Id. Hernandez v. Hillsides, Inc.*, 48 Cal. Rptr. 3d 780, 791 (2006), reiterates this holding, finding Hernandez's complaint was legally insufficient because it only alleged her employer's

intentional act of placing a video surveillance camera in her office.  In *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1041 (2005), the California Supreme Court affirmed the court of appeals' holding that L'Oreal's intentional acts could not establish negligence.  Yanowitz alleged that her supervisors solicited negative feedback about her, humiliated her, and criticized her in the presence of other employees and in written memoranda because of her refusal to fire an employee based on looks alone.  *Id.* at 1059-60.  All such conduct could not be interpreted as negligence.  *Id.*

Here, although it is difficult to interpret Plaintiff's allegations that Defendant "refused to pay" or "willful[ly] fail[ed]" to pay him as negligence, Plaintiff's complaint makes other assertions that could constitute negligent conduct.  FAC at ¶¶ 43, 45, 54.  For example, Plaintiff alleges that Defendant "failed to adequately maintain the loader, which was typically in a state of disrepair" and that "other equipment was in either poor or bad condition," such as "the lack of proper safety guards, exposed electrical lighting, and poor lighting conditions."  *Id.* at ¶¶ 10, 11, 13C.  He asserts that Defendant failed to "properly calculate and provide" pay to Plaintiff for all of his earned wages and overtime.  *Id.* at ¶¶ 12, 13C.  The complaint does not allege that Plaintiff's mental distress arose from being employed in an unsafe workplace, but rather was caused

23

by Defendant's intentional assignment to Plaintiff of hazardous duties under unsafe conditions.

      2.   <u>Is the NIED Claim Barred by Workers' Compensation?</u>

      In the alternative, Defendant argues that Plaintiff's NIED claim is barred by workers' compensation.  This argument is not well-founded.  Plaintiff's NIED claim is not barred by workers' compensation for the same reasons that his IIED claim is not barred.  Defendant's alleged conduct raises risks beyond those "inherent" in a normal employment relationship and conduct that arguably violates fundamental public policy of California. Plaintiff cannot have it both ways.  Plaintiff has not pleaded sufficient facts to state a claim for negligence.  Defendant's motion to dismiss Plaintiff's Ninth Cause of Action for NIED is GRANTED WITH LEAVE TO AMEND.

//

//

//

//

//

//

//

//

//

//

24

## V. CONCLUSION

For the reasons set forth above:

(1) Defendant's motion to strike is GRANTED;

(2) Defendant's motion to dismiss as to the IIED claim is

DENIED WITHOUT PREJUDICE;

(3) Defendant's motion to dismiss as to the NIED claim is

GRANTED WITH LEAVE TO AMEND;

Any amended complaint shall be filed within fifteen (15) days

following electronic service of this order.


SO ORDERED

Dated:   July 15, 2009

                                    ____/s/ Oliver W. Wanger____
                                       Oliver W. Wanger
                                  United States District Judge

25